| | |
|---|---|
| IEMA LEMONS,<br><br>        plaintiff<br>   v.<br><br>CITY OF MILWAUKEE a Wisconsin Municipal Corporation; EDWARD FLYNN individually and in his official capacity as the Chief of Milwaukee Police Department; LADMARALD CATES, individually and in his official capacity as a former police officer of the Milwaukee Police Department; ALVIN HANNAH, individually and in his official capacity as a police officer of the Milwaukee Police Department; ROBERT TOELLER, individually and in his official capacity as a police officer of the Milwaukee Police Department; JAMES FIDLER, , individually and in his official capacity as a police officer of the Milwaukee Police Department; JANE & JOHN DOE employees & police officers of the Milwaukee Police Department, in their individual and official capacities,<br><br>        defendants. | CIVIL CASE NO.: 13-CV-331<br><br><br>**COMPLAINT**<br>**AND JURY DEMAND** |

## COMPLAINT

### PRELIMINARY STATEMENT

1. IEMA LEMONS brings this civil action for money damages to redress the defendants' violation of her rights under the laws and Constitution of the United States. Milwaukee Police Officers acting within the scope of employment and under color of law, and in contravention of clearly established law, raped, and sexually assaulted, battered, used excessive force and threats, obstructed, hindered, impeded, failed to aid, falsely arrested,

1

and illegally detained Iema. These outrageous, cruel, reckless acts, shocking to the conscience, occurred because the City of Milwaukee and its policymakers intentionally and with deliberate indifference condoned, permitted, ignored, enabled, acquiesced in and trivialized this and similar unlawful conduct by the Milwaukee Police Department. This policy permitted Milwaukee Police Officers to continue outrageous and shocking conduct with no risk that there would be meaningful punishment. The outrageous harms inflicted on Iema Lemons were directly, actually and proximately caused by these defendants.

2. Iema brings this suit under 42 U.S.C. §§1983 and 1988 for violations of her rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. Iema seeks damages for permanent, physical, mental and emotional injuries, loss of earning capacity, loss of enjoyment of life, punitive damages, court costs and attorney fees.

## JURISDICTION

3. This Court has jurisdiction over Iema's claims pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(3) and (a)(4).

## VENUE

4. Venue in this Court is proper as to all Defendants pursuant to 28 U.S.C. §1391(a)(2) and (b)(2) because the events giving rise to the claims occurred within this District. Defendants are or were located in this District and/or have or had a regular and established place of business within this District and the events and omissions giving rise to the claims which are the subject of this action occurred within this District.

## PARTIES

5. Plaintiff IEMA is a mother of two, head of household, guardian and care-taker of two younger siblings and a citizen and resident of the City of Milwaukee, Wisconsin.

6. Defendant LADMARALD CATES was a duly appointed Police Officer with the City of Milwaukee Police Department during the events that are the subject of this lawsuit. Cates acted within the scope of his employment and under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Wisconsin and the City of Milwaukee. Defendant Cates is being sued in his official capacity as a former police officer for the City of Milwaukee and in his individual capacity.

7. Defendant, CITY OF MILWAUKEE ("City"), is a Wisconsin municipal corporation with its principal place of business at 200 East Wells Street, Milwaukee, Wisconsin 53202. The City is a defendant in this action because it maintains a policy, custom, and/or widespread practice of permitting misconduct by Milwaukee Police Officers thereby creating an independent basis of liability against the City pursuant to 42 U.S.C. §1983.

8. The City is also a defendant in this action because it is responsible and liable under Wis. Stat. §895.46 to pay any money judgment for damages and costs entered against the Defendant police officers for unlawful acts committed within the scope of their employment.

9. Defendant ALVIN HANNAH was a duly appointed Police Officer with the City of Milwaukee Police Department during the events that are the subject of this lawsuit. Hannah acted within the scope of his employment and under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Wisconsin and the

City of Milwaukee. Defendant Hannah is being sued in his official capacity as a police officer for the City of Milwaukee and in his individual capacity.

10. Defendant ROBERT TOELLER was a duly appointed Police Officer with the City of Milwaukee Police Department during the events that are the subject of this lawsuit. Toeller acted within the scope of his employment and under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Wisconsin and the City of Milwaukee. Defendant Toeller is being sued in his official capacity as a police officer for the City of Milwaukee and in his individual capacity.

11. Defendant JAMES FIDLER was a duly appointed Police Officer with the City of Milwaukee Police Department during the events that are the subject of this lawsuit. Hannah acted within the scope of his employment and under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Wisconsin and the City of Milwaukee. Defendant Hannah is being sued in his official capacity as a police officer for the City of Milwaukee and in his individual capacity.

12. Defendant EDWARD FLYNN, at all times material herein, was a duly appointed Chief of Police of the City of Milwaukee Police Department, acting within the scope of his employment and under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Wisconsin and the City of Milwaukee. Defendant Flynn is being sued in his official capacity as the Chief of Police for the City of Milwaukee and, in his individual capacity.

13. Defendants JOHN and JANE DOES, at the time of the events described herein were officers and/or employees of the City of Milwaukee Police Department acting within the

scope of their employment and under color of law. They are sued in their official and individual capacities.

## FACTUAL ALLEGATIONS

14. The Defendant City of Milwaukee knew that Cates had a history of violent assaults on women. Yet, despite that knowledge, Cates was permitted to retain his employment and shield, pepper spray, gun and baton, and –most importantly– the indicia of command and the power of arrest and use of force which he marshaled to rape and assault Iema. Eventually, the police investigated Cates' rape and assault of Iema and Cates was fired for "idling and loafing while on duty." The City of Milwaukee had exposed the mothers and daughters of Milwaukee to Cates, clothing him in the authority to use force and giving wide latitude to the scope of his employment regardless of his known propensity to assault women. For example:

    a. In 2007 Cates was investigated for sexual intercourse with a minor; the investigation provided reports to the Milwaukee County District Attorney who declined to prosecute Cates;

    b. In 2007 a citizen complained that Cates had violated her rights; this finding was sustained against him. Cates was given a one day suspension;

    c. In 2007 Cates was investigated for the sexual assault of a female held in a jail. Cates was not cleared of having engaged in this illegal conduct;

    d. In 2007 Cates was found to have failed to take action regarding a crime;

    e. In 2006 Cates was found to have failed to file reports;

    f. In 2005 Cates was investigated regarding sexual contact with a female prisoner and he was found to have failed to follow orders regarding the investigation;

5

g. In 2005 he was found to have failed to have worn a name tag while on duty;

h. In 2003 he was found to have failed to follow appropriate procedures;

i. In year 2000 Cates was found to have lied;

j. In year 2000 a female reported that Cates was harassing her with "hang-up" telephone calls;

k. In year 2000 Cates was found to have choked and assaulted a female.

Despite the foregoing incidents, the City of Milwaukee and Police Chief Flynn permitted Cates to remain an active Police Officer and in daily contact with the public.

15. On July 16, 2010, Iema, called 911 to report that persons were using bricks to break the windows in her home at 2655 North 15th Street, Milwaukee.

16. Two Milwaukee police officers, the defendants Ladmarald Cates and his partner Alvin Hannah, responded to the call. Defendants Hannah and Cates were uniformed and armed with standard issue firearms, batons, and pepper spray. Both officers were in a vehicle bearing words identifying them as police officers of the City of Milwaukee.

17. Cates is 6'1" and weighs 170-175 pounds. Iema is 5'1" and weighs under 110 pounds.

18. From the time of their arrival at Iema's house Officers Cates and Hannah did not investigate the crime reported by Iema, instead they focused their attention on Iema and her brother as the perpetrators.

19. Cates and Hannah knocked on Iema's door, identifying themselves as police officers. In response Iema permitted their entrance. Iema was home with her fiancé, her 15 year-old brother, and her two small children. Cates directed Iema to get the children out of the house and Iema did so.

20. Defendant Hannah immediately commenced a warrant check on Iema's brother and alleged that he was a missing juvenile.

21. Defendant Hannah then ordered Iema's brother from the house and placed him in the squad car in handcuffs.

22. In response to Iema's request Cates began his investigation. In the course of this investigation Cates accompanied Iema to the crime scene where she showed him the bathroom with its broken windows and the brick used to break them. Although Cates continued to observe the brick and broken windows, he acted skeptically, and then immediately unzipped the pants of his uniform and pulled out his penis.

23. Cates immediately ordered Iema to "Suck My Dick." Standing over Iema and completely blocking her exit, Cates repeatedly made this demand. Each time he uttered the words "Suck My Dick" his tone increased in threat and menace. Iema was intimidated and threatened because Cates was an armed police officer and she was afraid of his authority to use force. Cates blocked Iema from getting out of the house.

24. At all times Iema saw Cates' gun in his holster. She was afraid he would kill her if she did not comply with his demand and that, as a police officer any story he invented to cover such use of force would be believed.

25. As he forced his erect penis into Iema's mouth, Cates intensified the violent battery by shoving his fingers into her vagina. Cates then commanded Iema to bend over, forcibly grabbing Iema by the back of the neck and strangling her. Iema complied with Cates' command.

26. While Cates was strangling Iema he forcibly inserted his still erect penis into her vagina. The defendant's sexual assaults and strangling hurt Iema and sickened her causing her to

want to vomit. Cates then removed his penis from Iema's vagina and ejaculated towards the toilet. This permitted Iema to shove past Cates and run out.

27. Stunned and in physical, emotional and psychological shock from the violent ordeal she had suffered Iema collapsed down on the porch.

28. Defendant Police Officer Hannah approached Iema and told her that he also did not believe her account of how the windows were broken, and he commenced an argument with her and her brother.

29. Two neighbors of Iema observed the police investigation and that Iema was disarrayed and in a state of shock. Iema immediately told one of them that she had just been raped by Cates.

30. Hannah then arrested Iema's brother and as Iema and her neighbors protested, Hannah called for other police officers to assist.

31. Other police arrived, including James Fidler. Cates and Hannah then arrested Iema and her neighbors, Ms. Velez and Ms. Brooks. Iema was thrown to the ground and handcuffed. She was then dragged by Cates and other police to the prisoner van, openly and repeatedly stating to the police that she had been raped and needed to go to the hospital. Iema was ignored. Police Officers Toeller and Fidler testified later that they had heard Iema's statements and ignored them.

32. Iema repeated her claims and request for medical assistance in the police van as she was driven to District Station 3 at 49th and North. During this trip police officers insulted, demeaned, refused to assist, and refused to intervene or aid her. Iema was accused of crimes and told she was going to jail.

8

33. At the District police station Iema told the Milwaukee Police Officer who booked and fingerprinted her and other police personnel in the booking area, that she had been raped and assaulted by Cates and that she required medical attention. She was ignored and was accused of criminal acts. She was put in a cell.

34. Officer Toeller thereafter took her into a secure interview room and handcuffed her to a table. Toeller then allowed Cates to enter the interview room. Toeller then left Cates alone with Iema.

35. After Toeller left, Cates threatened Iema that other police officers would attack her if she continued to claim she had been raped. He also told her that, if she withdrew her claim, she would only get a ticket for her alleged criminal conduct. Iema was put in fear of her life by these threats. Cates told her that, even if she continued to say he raped her, he would only get suspended.

36. Cates then left the interview room and Toeller reentered. Cates continued to stand right outside the door so that he could hear what Iema was saying to Toeller. He remained outside the door during the entire period that Toeller interviewed Iema.

37. Because of Cates' threats Iema did not repeat to Toeller that Cates had raped and assaulted her. Though Toeller had previously heard Iema claim that Cates had raped and assaulted her, he did not question her about this.

38. Iema was returned to a cell where she continued to accuse Cates of raping and assaulting her and to request medical attention to passing police and jailors. She began to vomit.

39. Hours later, the Milwaukee Police Department's Professional Performance Division (PPD) was contacted about Iema's continuing and repeated accusations that she had been raped. She was transported to a hospital.

40. At 1:23 a.m. on July 17, 2010, approximately 11 hours after she had suffered Cates' violent rape-assault and the police officers continued failure to intervene and assist a victim, Iema was seen by RN Mackenzee Kuczmarski who testified that Iema's physical condition demonstrated she had been raped, noting evidence of strangulation, continuing nausea, vaginal pain, neck pain, neck swelling, and bruises to Iema's torso and arms. She noted also that there was bleeding from her cervix.

41. Upon discharge from the hospital Iema was taken back to jail where she remained for several more days. No charges for any violations of law were ever pursued against her.

42. During the police internal investigation of Iema's accusations, Cates repeatedly lied claiming first that he had not had intercourse and later claiming it was consensual. On December 3, 2010, 20 weeks after Iema had been raped, Police Chief Edward Flynn discharged Cates from the Milwaukee Police Department citing as his reasons that (1) Cates had made untrue statements; and, (2) that he was derelict in his duties "as he was idling and loafing while on duty."

43. On September 20, 2011, Cates was federally indicted. He was tried to a jury and on January 12, 2011 was found guilty. On July 30, 2012, Cates was sentenced to a 24 year term of imprisonment.

44. The City of Milwaukee and Police Chief Edward Flynn knew that Cates was vested with power and authority, often worked independently without direct supervision, frequently worked where his conduct was not in public, and that he interacted frequently with vulnerable populations.

45. The City of Milwaukee and Police Chief Edward Flynn knew that rapes and sexual assaults occur on a regular basis.

46. Cates exercised the power granted to him through his employment as a police officer. In the course of his response to the 911 call Cates used force, threats, intimidation and coercion, and knew he would be helped by other police officers.

47. The City of Milwaukee and Police Chief Edward Flynn failed to respond to the numerous red flags that Cates was a dangerous threat and liable to misuse his force and power; to lie about and misrepresent his conduct, to obstruct the course of justice, and, to indulge in other cruel, unlawful and dangerous conduct.

48. Since the incident and her mistreatment by the Defendants, Iema has been receiving psychological care for anxiety, post-traumatic stress disorder, and depression, and has been incurring costs relating to such care. The actions of the Defendants also caused Iema continuing bodily harm in that she is unable to sleep, has difficulty eating, and experiences panic attacks and discomfort in society.

49. Iema has been and will likely continue to be unable to work due to the trauma she experienced as a result of the incident and the improper and unlawful actions of the Defendants.

50. Although Iema showed promise and was studying on a college course in order to better herself and her family she has been unable to continue her education due to the effects of her experiences.

## CAUSES OF ACTION

### First Claim for Relief
### 42 U.S.C. §1983
### (Against Defendant Cates in his individual and official capacity)

51. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 50 above.

52. Throughout his investigation of Iema's 911 call Cates was acting under color of state law and in the scope of his employment as a police officer for the City of Milwaukee. Cates deprived the plaintiff of her rights secured to her under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

53. The defendant willfully, recklessly, and callously disregarded and deprived the plaintiff of her constitutional right to be secure in her person and her right to bodily integrity by abducting the plaintiff and sexually assaulting and raping her.

54. Cates acted under color of law and in the scope of his employment utilizing the authority conferred on him by the defendant City of Milwaukee.

55. The defendant willfully, recklessly, and callously disregarded, and thereby deprived the plaintiff of, her right to bodily integrity by forcing his penis into plaintiff's mouth, and causing it to enter the plaintiff's body, all acts for which were done in disregard of the plaintiff's constitutional rights.

56. The defendant disregarded the plaintiff's constitutional rights by forcing his penis into her vagina and by strangling her.

57. Defendant Cates intentionally violated plaintiff's intimate bodily integrity, used force and death threats against plaintiff, and caused her to be unlawfully arrested and detained in violation of her constitutional rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

58. The Defendant willfully, recklessly, and callously disregarded and deprived the plaintiff of her right to be secure in her person by intentionally, willfully, knowingly, and recklessly placing the plaintiff in fear of death and/or bodily injury by utilizing the authority conferred on him by the defendant City to isolate and be alone with the plaintiff

in the District Station 3 at 49th and North, where he threatened violence against Iema if she continued to identify him as her assailant.

59. As a direct cause of the acts described above, plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, has sustained loss of earnings and earning capacity, and has incurred and will continue to incur expenses for medical, emotional, and mental health treatment. 42 U.S.C. §1983 provides a remedy for violation of these rights.

## Second Claim of Relief
## 42 U.S.C. §1983
**(Against Defendants Toeller, Hannah, Fidler and Jane & John Doe City of Milwaukee Police officers in their individual and official capacities)**

60. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 59 above.

61. While Toeller, Hannah, and Jane & John Doe City of Milwaukee Police officers were acting under color of state law and in the scope of their employment for the City they deprived the plaintiff of her rights secured to her under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

62. These defendants intentionally and recklessly failed to assist and/or intervene, and/or investigate when the plaintiff made credible claims that a police officer had violated her bodily integrity by raping her.

13

63. These defendants caused the plaintiff to be illegally arrested and detained on a pretext in violation of her constitutional rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

64. As a result of the above-described conduct, plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, has sustained loss of earnings and earning capacity, and has incurred and will continue to incur expenses for medical, emotional, and mental health treatment. 42 U.S.C. §1983 provides a remedy for violation of these rights.

### Third Claim for Relief
### 42 U.S.C. §1983
### (Against Defendant Chief of Police Edward Flynn in his individual and official capacity)

65. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 64 above.

66. Defendant Flynn knew that he had a legal obligation to protect Iema from assault and sexual attack, and knew that his actions and omissions created a substantial risk of serious injury to Iema.

67. Defendant Flynn at all times material to this complaint acted under color of law and in the scope of his employment.

68. Defendant Flynn knew that sexual violence and assault is prevalent in society, that there was a foreseeable risk that members of the public could be subject to such conduct and that such conduct could and was known to have been perpetrated by police officers.

14

69. Defendant Flynn knew that police officers occupy a unique position of trust in the community.

70. Defendant Flynn knew that police officers have awesome and extraordinary powers and are equipped with deadly and other weapons to enable them to arrest, detain and use force. Defendant Flynn knew that citizens place themselves in grave peril when they resist the power of police officers.

71. At all times material hereto, Defendant Flynn was responsible for adopting and implementing the rules and regulations in regard to hiring, retaining, screening, training, supervising, controlling, disciplining and assigning police officers and/or employees to their duties within the City of Milwaukee Police Department.

72. Defendant Flynn was deliberately indifferent to his supervisory and policy making duties in that he either expressly or impliedly acknowledged and assented to the failure to train, supervise, control or otherwise screen employees of the City of Milwaukee Police Department including, but not limited to, defendant Cates for dangerous propensities, lack of training and/or skill or other characteristics making said officers and employees unfit to perform their duties.

73. Defendant Flynn knew or should have known of the history of Cates' abuses. Defendant Flynn was deliberately indifferent to the safety of the public, including the plaintiff, by failing to remedy the dangerous threat Cates posed, even though he had notice of that threat.

74. Defendant Flynn's deliberate indifference to this threat caused a substantial and foreseeable risk of harm to the plaintiff.

75. The conduct of Defendant Flynn was deliberately indifferent to the constitutional rights of all persons, including the plaintiff.

76. Defendant Flynn abdicated his policymaking and oversight responsibilities, thereby allowing the other defendants to ignore the requirements of law and the rights of citizens.

77. As a result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, has sustained loss of earnings and earning capacity, and has incurred and will continue to incur expenses for medical, emotional, and mental health treatment. 42 U.S.C. §1983 provides a remedy for violation of these rights.

**Fourth Claim of Relief**
**42 U.S.C. §1983**
**(City of Milwaukee)**

78. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 77 above.

79. At all times material hereto, defendant City, through its officers and agents, was charged with the responsibility of hiring, firing, screening, training, supervising, disciplining and controlling officers of the City of Milwaukee Police Department.

80. At all times material hereto, defendant City, through its officers and agents, was deliberately indifferent in that it either expressly or impliedly acknowledged and assented to the failure to train and/or supervise and/or control and/or otherwise screen employees of the Milwaukee Police Department including, but not limited to, defendant Cates for

16

Case 2:13-cv-00331-CNC   Filed 03/21/13   Page 16 of 19   Document 1

dangerous propensities, lack of training and/or skill or other characteristics making those officers unfit to perform their duties and to interact with the public.

81. At all times material hereto, defendant City, through its officers and agents, was deliberately indifferent to the rights of the public, including the plaintiff, in that it failed to determine whether members of the City of Milwaukee Police Department, including defendant Cates, posed a threat to the public as a result of their propensity to commit unlawful acts.

82. At all times material hereto defendant City, through its deliberate indifference, failed to ensure that the police officers of the City of Milwaukee Police Department did not violate the constitutional and statutory rights of citizens, including the plaintiff, while said officers were acting under color of state law and in the scope of their employment for the City of Milwaukee Police Department.

83. At all times material hereto defendant City's policy permitted and tolerated the above described acts thereby evidencing the existence of a pattern and practice among police officers.

84. As a result, police officers, including defendant Cates, were encouraged and invited to believe that members of the public could be subjected to assaults, illegal arrests, detentions, use of force through sexual violence, and that such conduct was and would be permitted by defendant City.

85. Defendant City has maintained a system of inadequate pre-employment background checks and review of incidents of abuse of lawful authority. The City has failed to subject officers who employed illegal or improper conduct to appropriate discipline, and/or closer supervision and/or retraining, to the extent that it has become the de facto

17

policy and custom of the Milwaukee Police Department and the City to tolerate and acquiesce in such acts by its officers.

86. Defendant City, through its officers or agents, has maintained a long-standing, widespread history of failure to properly discipline despite notice of unlawful conduct by its employees.

87. As a direct and proximate cause of the acts described above, plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, loss of normal life, disgrace, humiliation, and loss of enjoyment of life, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, has sustained loss of earnings and earning capacity, and has incurred and will continue to incur expenses for medical, emotional, and mental health treatment. 42 U.S.C. §1983 provides a remedy for violation of these rights.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the following relief from this Court:

a. Compensatory damages for all pecuniary and non-pecuniary losses in an amount to be determined;

b. Punitive and exemplary damages in an amount to be determined;

c. Reasonable attorney fees and costs incurred in bringing this action pursuant to 42 U.S.C. §1988; and

d. Such other and further relief as the Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

PLAINTIFF HEREBY DEMANDS A TWELVE (12) PERSON JURY TRIAL OF THIS MATTER ON ALL ISSUES SO TRIABLE.

Dated at Milwaukee, Wisconsin this 21st day of March, 2013.

        THE SHELLOW GROUP
        Attorney for Plaintiff


        __s/Robin Shellow_____
        Robin Shellow, #1006052
        324 West Vine Street
        Milwaukee, Wisconsin 53212
        Tel: 414.263.4488
        Fax: 414.263.4432
        tsg@theshellowgroup.com


Of Counsel:
Shellow & Shellow, S.C.
James M. Shellow, #1006070
Lin C. Solomon,
Admitted to Eastern District of Wisconsin on 1/9/13
324 West Vine Street
Milwaukee, Wisconsin 53212
Tel.: 414.271.8535
Fax: 414.263.4432
jamesgilda@aol.com

19

Case 2:13-cv-00331-CNC   Filed 03/21/13   Page 19 of 19   Document 1